THOMAS E. BURROUGH, RESPONDENT, v. NEW JERSEY
GAS COMPANY, APPELLANT.

Argued March 5, 1920—Decided June 14, 1920.

Where the qualification testimony of a real estate agent called as an
expert shows that as a result of his experience in having sold
several like properties similarly located, some with and some
without shade trees on them, he has acquired special knowledge
of the monetary effect of the presence or absence of shade trees
upon the market value of a particular suburban dwelling-house
property, it was *held* not to be error for the trial court, in the
exercise of its discretion, to permit such expert, who was familiar
with the property in question and had examined it both before
and after its shade trees were destroyed by defendant's negli-
gence, to testify to the amount of the damage to the value of the
property resulting from such destruction.

On appeal from the Supreme Court.

For the appellant, *Norman Grey* and *Charles V. D. Joline*.

For the respondent, *Edward C. Waddington*.

The opinion of the court was delivered by

WHITE, J.    Plaintiff recovered a judgment for $497 and
costs for damage to his homestead in the killing of two shade
trees and the contamination of a well of drinking water
thereon by illuminating gas escaping from pipes and connec-
tions negligently constructed and maintained by defendant in

the adjoining highway. A former similar judgment was reversed by this court (*Burrough v. New Jersey Gas Co.,* 88 *N. J. L.* 643) because two real estate agents were permitted to testify to, and to the amount of, the diminution in value of the property from the destruction of the shade trees upon showing only a general real estate agent expert qualification in the neighborhood, but without any evidence of special knowledge on their part of the particular subject under investigation, namely, the effect upon real estate values resulting from the presence or absence of shade trees upon like properties similarly situated. A like error is now claimed in the present trial, but we think without foundation.

The testimony complained of is that of Sheriff Hendrickson (a witness not called on the former trial), whose qualification testimony showed that he is, and has been, for twelve years actively engaged in the real estate business of buying and selling and placing mortgages upon properties in Gloucester county similar in character and location to the plaintiff's property; that he had bought and sold such properties (giving and being cross-examined upon the particular instances) *with* shade trees and such properties *without* shade trees on them; that from this experience he was able to say that the absence of shade trees diminished the market value of such properties, and how much; that he was a member of the shade tree commission of Woodbury, in Gloucester county, and as such had had to do with the planting of new young shade trees and with the replacing of old dead ones and with the buying of shade trees for planting, and had made a study of the beneficial effects of shade trees in the neighborhood in question. He was then permitted to testify over objection that he was familiar with the plaintiff's property and had examined it both before and after the shade trees were killed, and that its market value was from $500 to $600 less by reason of the loss of the shade trees.

The admission of this evidence is attacked for three reasons:

1. It is claimed that the subject, namely, the monetary effect upon its market value of the presence or absence of shade trees on a man's dwelling-house property in a country

village, is not properly a subject for expert testimony, because on such a subject the judgment of each of the jurymen is as good as that of the expert witness. But this, obviously, is not true. Everyone who has lived in the suburbs or in the country in the summertime knows that properly located shade trees add to the comfort of the dwelling-house he occupies, but he does not know how much they add to its market value unless he has special knowledge upon the subject. Neither would the members of the jury so know without such special knowledge. If they are not to be expected to know the market value of a particular country home without hearing the testimony of those specially qualified to know its market value, how much less can they be expected to know the monetary value of the elements which go to make up that market value. In *Elvins* v. *Delaware and Atlantic Telephone Co.,* 63 *N. J. L.* 243, Mr. Justice Van Syckel, speaking for this court, said: "It certainly requires some special knowledge to be able to estimate the value of trees. If they are to be cut into cord wood, the witness must have some experience to enable him to say how many cords they will make. Whether they can be more profitably disposed of for cabinet making purposes, for railroad uses, or to the carriage builder, requires still more experience. The value of trees as shade trees cannot be so accurately computed as their value for commercial purposes, but still that value depends upon the size and variety of the trees, their location on the premises, the time it takes to grow them, and the price which well-shaded residence lots in the same locality have commanded during a period of years in excess of lots as well situated, but without the attraction of shade or ornamental trees. Such special knowledge, not ordinarily possessed, might be acquired by a real estate agent or by an experienced landscape gardener, and it would be within the domain of expert knowledge qualifying a witness to give evidence of his opinion as to values."

We think, therefore, that the subject falls within that class to which expert testimony is properly applicable.

2. It is said that none of the special instances of sales or purchases of properties with or without shade trees, which

formed the basis of the witness Hendrickson's special knowledge, occurred in the village of Hurfville, which is where the plaintiff's property was situated. But Hurfville is a small country village of one or two dozen houses, and the testimony showed that the villages where the special experience sales occurred were similar to Hurfville and were all in the same part of Gloucester county and within a radius of about seven miles of Woodbury. We think the learned trial judge was quite within the limits of his discretion in admitting the evidence so far as this point is concerned. Quite likely, also, the evidence was admissible on the ground that it furnished some criterion, and while not the best that could be imagined, was in fact the best that the circumstances furnished; for it might well be that in the small country village of Hurfville no similar sale had taken place sufficiently recently to avoid the objection of being too remote in time to be of value.

3. It is claimed the witness Hendrickson failed to qualify as an expert under our cases, citing *Elvins* v. *Delaware and Atlantic Telephone Co., supra; Van Ness* v. *Telephone Co.,* 78 *N. J. L.* 511; *Crosby* v. *City of East Orange,* 84 *Id.* 708, and the decision of this court in the appeal from the former trial of this case reported in 88 *Id.* 643. An examination of these cases, however, does not support this view. The Elvins case, as appears from the foregoing quotation from Mr. Justice Van Syckel's opinion, very clearly intimates that the special knowledge qualification, namely, experience knowledge of the monetary effect on market value of the presence or absence of shade trees on like property similarly located, the absence of which was fatal in that case, was exactly the qualification which Hendrickson in the case *sub judice* was proved to possess. So, in the Van Ness case, where Mr. Justice Bergen, reading the opinion of this court, said: "To qualify one as an expert witness there must be some proof that he has special knowledge of the subject about which he is called upon to express an opinion. The knowledge may come from experience in, or study of the matter, but there must be something shown to justify the conclusion that he has some special knowledge to make his opinion of any value. So far as appears,

none of the land dealt in by the witness had a single shade tree on it, and the opinion he ventured was nothing more than an estimate without any special knowledge on which to base it. Special knowledge of the value of real estate in a given locality does not imply ability to estimate the value of ornamental or shade trees."

In the Crosby case a young woman twenty-four years of age, who had been in the real estate business two years, and whose only special knowledge upon the point under inquiry was that on one occasion a proposed lessee, being offered a choice of two farms, one with and the other without a water supply, selected the former, was permitted to testify to the monetary difference in the rentable and usable value per year between the property involved in the suit before and after it had been deprived of its water supply, to the extent that it was so deprived. In condemning the admission of the opinion of this witness, Mr. Justice Bergen, speaking for this court, said : "Nor does it appear that she ever had occasion to know, or make any comparison between, the rental value of properties supplied with water and those not so supplied." On the former trial of the case *sub judice* it was likewise the absence of the special knowledge on the part of the witnesses Evans and Keir, which the witness Hendrickson in the present trial possessed, which was fatal.

The same distinction appears in the leading case of *Pennsylvania, &c., Railroad Co.* v. *Root,* 53 *N. J. L.* 253, where Chief Justice Beasley spoke for this court, and in *Laing* v. *United New Jersey Railroad and Canal Co.,* 54 *Id.* 576 (opinion by Mr. Justice Dixon), and in *Pennsylvania, New Jersey and New York Railroad Co.* v. *Schwartz,* 75 *Id.* 801, where the opinion of this court was delivered by Mr. Justice Garrison. There is also a collection of cases in a Supreme Court opinion by Mr. Justice Black in *Ross* v. *Commissioners Palisades Interstate Park,* 90 *Id.* 461.

We think, therefore, that the admission of the evidence here objected to was, under the clear distinction running through the cases of this state, well within the discretion of the learned trial judge, and that, therefore, such admission

not being erroneous, as a matter of law, is not a cause for reversal. *New Jersey Zinc Co.* v. *Lehigh Zinc Co.,* 59 *N. J. L.* 189.

There are a number of other assignments of error, some to the admission of evidence, some to the refusal of requests to charge, and some to the denial of motions to nonsuit and to direct a verdict for the defendant and for nominal damage instructions, but we find all of them to be without merit. The principal claim of error is the refusal to nonsuit and to direct a verdict, and in several of the refusals of requests to charge, is based upon the alleged duty of the plaintiff to himself repair defendant's gas mains in the public highway when he saw that their leaky condition was likely to injure his property; but this view, even if otherwise tenable, overlooks the fact that the jury was justified from the evidence in finding that the defendant's original negligent laying of the pipes and connections caused the injury and that the damage resulted before its danger became apparent.

It is also claimed that it was error to admit proof of the cost ($125) of putting down an artesian well to take the place of the ruined dug well, because the former was a different kind of well. The necessity, however, for the different kind of well was, if the jury believed the evidence, fully established. An attempt was first made to put down a dug well, but it dried up and would not furnish water, and it became necessary to go down deeper (one hundred and forty feet) in order to get water to supply the place of that which was so contaminated as to be unfit for use. Obviously, for such a depth, an artesian well at a cost of $125 was much more economical than a dug well. We think the question of the reasonable necessity for what was done was properly left to the jury.

The judgment is affirmed, with costs.

*For affirmance*—PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, GARDNER, ACKERSON, JJ. 8.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 6.